**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1224-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTOINE J. MARTIN, a/k/a
BROOKLYN MARTIN,

     Defendant-Appellant.[1]

_____

Submitted May 1, 2019 – Decided May 28, 2019

Before Judges Nugent, Reisner, and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-12-1340.

Joseph E. Krakora, Public Defender, attorney for appellant (Magaret McLane, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

---

[1] This appeal was calendared back-to-back with State v. Hoffman, No. A-4341-16.

PER CURIAM

Convicted by a jury of multiple offenses committed during a home invasion and robbery, and sentenced to an aggregate prison term of twenty-one and one-half years with seventeen years of parole ineligibility, defendant Antoine J. Martin, appeals from the Judgment of Conviction. He argues:

> POINT I
> THE PROSECUTOR'S HIGHLY PREJUDICIAL COMMENTS IN SUMMATION DENIGRATING THE DEFENSE REQUIRE REVERSAL OF DEFENDANT'S CONVICTIONS.
>
> POINT II
> INADMISSIBLE TESTIMONY FROM A POLICE OFFICER THAT HE WAS AFRAID DEFENDANT WOULD BE VIOLENT DURING AN INTERROGATION AND THE STATE'S IMPROPER ARGUMENT IN SUMMATION THAT DEFENDANT WAS GUILTY OF THE ROBBERY BECAUSE HE WAS A VIOLENT PERSON REQUIRE REVERSAL OF DEFENDANT'S CONVICTIONS. (Not Raised Below)
>
> POINT III
> DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BECAUSE OF THE ERRONEOUS ADMISSION OF HEARSAY EVIDENCE. (Not Raised Below)
>
> POINT IV
> THE TWENTY-ONE YEAR AGGREGATE SENTENCE IS MANIFESTLY EXCESSIVE.

Because the sentencing judge did not explain his reasons for imposing consecutive sentences or for ordering that defendant serve them in a specific sequence, we remand for resentencing as to those issues.  We otherwise affirm the Judgment of Conviction.

I.
A.

In December 2014, a Middlesex County grand jury, in eighteen counts of a twenty-count indictment, charged defendant and co-defendants, Brooke L. Hoffman and Robert Peterson, with the following crimes: second-degree conspiracy, N.J.S.A. 2C:5-2 (count one); first-degree robbery, N.J.S.A. 2C:15-1 (counts two and three); second-degree kidnapping, N.J.S.A. 2C:13-1(b) (counts four and five); second-degree burglary, N.J.S.A. 2C:18-2 (count six); third-degree criminal restraint, N.J.S.A. 2C:13-2 (counts seven and eight); third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (counts nine and ten); fourth-degree possession of prohibited devices, N.J.S.A. 2C:39-3(h) (count eleven); second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b) (count twelve); fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d) (count thirteen); third-degree possession of a knife for an unlawful purpose, of N.J.S.A. 2C:39-4(d) (count fourteen); second-degree theft by extortion, N.J.S.A. 2C:20-5(a) (count fifteen); third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (count sixteen); fourth-degree criminal mischief, N.J.S.A.

2C:17-3(b)(8) (count seventeen); and third-degree receiving stolen property, N.J.S.A. 2C:20-7 (count nineteen). In addition, the grand jury charged defendant with third-degree hindering his own apprehension by giving false information, N.J.S.A. 2C:29-3(b)(4) (count twenty), and Peterson with third-degree hindering his own apprehension by discarding a knife N.J.S.A. 2C:29-3(b)(1) (count eighteen).

Before trial, the court entered an order that dismissed the kidnapping counts, four and five, and denied defendant's motion to suppress statements he had made to police. The State tried defendant alone. The jury convicted defendant of first-degree robbery (counts two and three), second-degree burglary (count six), first-degree theft by extortion (count fifteen), and the lesser included disorderly persons offenses of false imprisonment (counts seven and eight); and found him not guilty on the remaining counts.

A judge who had not presided over the trial sentenced defendant. The judge imposed the following prison terms: on each first-degree robbery count (two and three), twenty years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; on the second-degree burglary count (count six) ten years subject to NERA; on each of the two false imprisonment counts (counts seven and eight), six months; and on the fourth-degree hindering apprehension count (count twenty), eighteen months. The judge ordered the sentences to be served concurrently, except for the eighteen-

month term for hindering apprehension, which the judge ordered to be served consecutively and first, followed by the sentences on the remaining counts. In ordering that the sentence for hindering apprehension be served first, before the sentences on the remaining counts, the judge cited State v. Ellis, 346 N.J. Super. 583, 597 (App. Div. 2002), but did not explain his reasons.

The judge merged the remaining counts. He also imposed appropriate fees, penalties, and assessments. Last, he ordered defendant make restitution to the victims.

B.

The State presented the following evidence at defendant's trial. Late on an April morning in 2014, one of the victims, Mrs. Lawrence, was in her home fixing an early lunch for her husband of sixty-three years, when a stranger entered her home through the back door and walked into the kitchen. Mrs. Lawrence assumed it was a friend of co-defendant, Brooke Hoffman, who had come to tell her that Brooke no longer needed a ride to the bank, but the man appeared "alarmed" when he saw Mrs. Lawrence and turned back out. A few minutes later the man reentered the kitchen and said, "we're not going to hurt you, we're just here for one thing and one thing only."

A-1224-17T1

The man was co-defendant Robert Peterson, who testified at defendant's trial. After Peterson entered the Lawrence's kitchen a second time, Hoffman and defendant followed him. They wore scarves over their heads. They went "directly to the bedroom" and brought Mr. Lawrence into the kitchen. Defendant forcefully shoved Mr. Lawrence into a chair. Defendant and Hoffman then ransacked the house looking for money while Peterson, through the use of threats, forced the Lawrences to remain quiet in the kitchen.

During the home invasion, defendant and Hoffman frequently returned to the kitchen demanding to know where the Lawrences kept their money. Complaining the robbery was taking too long, defendant grabbed an antique clock from an adjoining room and smashed it in an attempt to terrorize the Lawrences into telling him where they kept their money. After breaking the clock, defendant took a knife from the kitchen and gestured it at Mr. Lawrence while walking towards him demanding where he could find the money.

Defendant threatened to burn the house down if they found no money and Mrs. Lawrence believed him. Eventually, defendant and Hoffman found a gun under a mattress in a bedroom and brought it to the kitchen. Defendant pointed the gun at the victims, demanded they disclose the location of money, and told them "things are gonna get bloody in here."

A-1224-17T1

Co-defendant Hoffman found stun guns in the home and brought those into the kitchen. Co-defendant Peterson placed the knife on a kitchen counter while grabbing a stun gun. Mrs. Lawrence grabbed the knife and attempted to escape. Peterson chased after her, causing her to lose her balance and fall. Mrs. Lawrence was unable to get up. Peterson picked her up and carried her back into the kitchen. He called out to his co-defendants. When they did not answer, he realized they had fled. Peterson told the Lawrences not to move and then fled out the back door.

Mr. Lawrence went next door to phone 9-1-1 because the intruders had ripped the phones out of the walls. Mr. Lawrence told the dispatcher that his house had been ransacked and robbed by two men and one woman and the assailants had a knife. He also told the dispatcher the assailants stole two guns and a pistol from the house.

In the meantime, co-defendant Peterson ran to the lot where defendant's car had been parked and threw the knife underneath a trailer. The car was gone. Peterson ran to a nearby strip mall and attempted to hide in a hair salon.

Responding police, dispatched by the 9-1-1 operator, began to patrol the area looking for the suspects. After receiving information that a possible suspect had entered the hair salon, officers entered the salon and arrested Peterson as he came out of a restroom saying, "you got me, you got me." He had removed his shirt so

7

the police would know he was unarmed.  He had hidden a Taser in the bathroom ceiling.  Police eventually recovered his shirt, the Taser, and the knife he had discarded.  Police drove Peterson to the Lawrence's home where Mrs. Lawrence identified him as one of the perpetrators.

Police officers located the red Cadillac, which was registered to Chevon Martin, in the parking lot of an apartment complex.  Inside the car was a student identification bearing defendant's name.  Peterson, who was in custody at the time, confirmed to police the defendant, known as "Brooklyn," was his accomplice.

Police surrounded defendant's apartment.  Defendant called 9-1-1 and told the dispatcher that he was in New York but was told to call the police department in the town where he lived.  Police called the number defendant provided and spoke to his wife.  Next, they spoke to defendant.  Defendant said he was in New York visiting family, but police traced his phone to his apartment and told him to come out, which he did.  The police arrested him.

Defendant's wife gave police consent to search the apartment and the Cadillac. Police found co-defendant Hoffman hiding in the closet and found various items from the Lawrence home in the house, including the .22 caliber handgun, jewelry, Mr. Lawrence's Korean War dog tags, military medals, and some foreign currency.

A-1224-17T1

In a jewelry box, police found a receipt dated June 22, 1977, with Mr. Lawrence's name on it.

After being driven to the police station, defendant waived his Miranda[2] rights and gave two statements, both of which were recorded and played for the jury with some redactions. In his statements, defendant maintained he had not known of or participated in the robbery but had merely agreed to give Peterson and Hoffman a ride in exchange for fifty dollars for gas. During his first statement, Detective Clifford accused defendant of lying.

Detective Clifford left the interrogation room at one point but returned after defendant stood up and would not listen to the another officer's instructions to sit down. The detective twisted Martin's arm behind his back and took him out of the interrogation room. Defendant testified that after leaving the interrogation room officers continued to twist his arm.

Approximately two hours later, defendant gave a second statement. In the second statement, defendant said he followed Peterson and Hoffman to the back door of the house. He described what his co-defendants did during the robbery. His account was consistent with the Lawrence's and Peterson's accounts, but defendant

_____

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

maintained he did not participate. Defendant claimed a fourth person named Malik drove with the defendants.

Defendant testified at trial. He insisted his second statement was false, and he had provided details from Peterson, who, from an adjacent cell, had told defendant what he had told the police. The jury rejected defendant's defense.

## II.

Defendant seeks a new trial on three grounds. The first ground involves the allegedly prejudicial remarks in the prosecutor's summation. Defendant objected to only one of the three remarks he now complains of. In his second and third points, defendant complains of statements made by prosecution witnesses during his trial, none of which he objected to when they were made.

If a defendant raises an issue on appeal that he did not preserve by an objection or otherwise at trial, we review the action or omission complained of for plain error. R. 2:10-2. "Plain error is a high bar. . . ." State v. Santamaria, 236 N.J. 390, 404 (2019).

> A defendant who does not raise an issue before a trial court bears the burden of establishing that the trial court's actions constituted plain error because to rerun a trial when the error could easily have been cured on request[] would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal.
>
> [Id. at 404-05. (alteration in original) (citations omitted).]

10

In none of his arguments has defendant demonstrated error, let alone plain error.

## A.

Defendant first contends it was prejudicial error for the prosecutor, in his summation, to refer to the man named Malik as "mysterious," and to defendant's assertion that Malik could have been the third intruder as "speculative" and "wildly speculative." Defendant also complains that the prosecutor characterized his argument that Malik could have been the third intruder as "really absurd." Last, defendant takes exception to the prosecutor arguing it was unlikely defendant did not know Malik's last name, as Malik was married to defendant's sister.

The only objection defendant made to the prosecutor's summation was to his remarks that the supposition Malik was the third intruder was speculative or highly speculative. Defendant made the remarks belatedly, not when they were made, but just before the court was ready to deliver its final instructions to the jury.

We find no merit in defendant's arguments. First, co-defendant Peterson, who testified at trial, testified that co-defendant Hoffman and defendant, not Malik, perpetrated the home invasion and robbery. Defendant testified he drove the co-defendants to the crime scene at their request. He, not the co-defendants, asked Malik to accompany him. He testified that when the co-defendants left to enter the

home, he and Malik stayed in the car. He said of Malik: "Malik, he was in the car and he was in front of the car, but I don't know where he actually went. Like he didn't stay in my vicinity because I'm looking down at my phone, I just know he wasn't around me the entirety of the time."

Considering the context of defendant's meek implication that perhaps Malik was the third perpetrator, we find no error in the prosecutor's characterization of such testimony as speculative or wildly speculative. Moreover, even if the prosecutor's statement should not have been made, in view of the co-defendant's testimony, defendant's statement, and evidence police seized from defendant's car and apartment, the error was harmless; as were the prosecutor's other remarks about Malik.

B.

Defendant's arguments in his second and third points are without sufficient merit to warrant extended discussion. R. 2:11-3(e)(2). His argument about Detective Clifford's explanation for twisting defendant's arm during the custodial interrogation is constructed around defendant's unique interpretation, or misinterpretation, of what Detective Clifford actually said. And defendant's third point, concerning hearsay statements, hardly demonstrates plain error. For example, he cites testimony that the police received information about the make and model of

12

the car involved in the home invasion and robbery, and asserts such information was prejudicial hearsay, yet defendant himself testified at trial that he drove the car to the victims' home.

Even if the testimony defendant now challenges for the first time on appeal was erroneously admitted, the error was harmless in view of the overwhelming evidence the State presented against defendant. The testimony cited by defendant in his second and third points was clearly not capable of producing an unjust result. R. 2:10-2; State v. McKinney, 233 N.J. 475, 494 (2015).

### III.

We turn to defendant's sentence. Defendant's argument that the sentencing judge failed to adequately consider his military record and post-traumatic stress disorder as support for finding additional mitigating factors, such as substantial grounds tending to excuse defendant's conduct, conduct unlikely to recur, or the character and attitude of defendant indicate he is unlikely to reoffend, have no merit and warrant no discussion. R. 2:11-3(e)(2). We agree, however, the court gave an inadequate explanation for imposing consecutive sentences and ordering the sentence for the fourth-degree hindering defense be served in its entirety before the remaining, concurrent sentences.

A-1224-17T1

"When a trial court fails to give proper reasons for imposing consecutive sentences at a single sentencing proceeding, ordinarily a remand should be required for resentencing." State v. Carey, 168 N.J. 413, 424 (2001) (citing State v. Miller, 108 N.J. 112, 122 (1987)). In addition, when "imposing a least restrictive or flat prison term preceding a more restrictive prison term, the court is directed to explain the consequence of any sequencing and to justify its exercise of discretion to impose the specific real-time consequence based on the court's finding and weighing of aggravating factors." State v. Pierce, 220 N.J. 205 (2014) (citing State v. Ellis, 346 N.J. Super. 583, 597 (App. Div. 2002)).

Here, the court did not comply with the requirements of Carey and Ellis. Citing to cases, without further explanation, does not satisfy their requirements. Accordingly, we vacate the terms of the Judgment of Conviction imposing consecutive sentences and remand for resentencing as to the issue of whether the sentence on the hindering count should be consecutive and served first. In making its decision, the court shall consider, among other criteria, the criteria set forth in State v. Yarbough, 100 N.J. 627, 643-44 (1985). The court shall afford the parties ample opportunity to be heard on this issue, as well as whether, as defendant contends, the second-degree burglary conviction must be merged into the first-degree robbery conviction. We otherwise affirm the Judgment of Conviction.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION