# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3456-23

STATE OF NEW JERSEY
IN THE INTEREST OF
J.M.H., a juvenile.[1]

_____

Submitted January 13, 2026 – Decided January 27, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket Nos. FJ-04-0430-24 and FJ-04-0777-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant J.M.H. (Rachel A. Neckes, Assistant Deputy Public Defender, of counsel and on the briefs).

Grace C. MacAuley, Camden County Prosecutor, attorney for respondent State of New Jersey (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] We use initials to protect the confidentiality of the juvenile. R. 1:38-3(d)(5).

J.M.H. appeals from the Family Part adjudication of delinquency entered after a bench trial for conduct which, if committed by an adult, would constitute third-degree arson, N.J.S.A. 2C:17-1(b)(5).  Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

We summarize the facts and procedural history from the one-day trial. During the trial, the State presented the testimony of Detective Michael Matkowski and a juvenile, J.S.  Defendant also testified.

Matkowski testified that he had worked in law enforcement for over ten years and was employed by the Monroe Township Police Department (MTPD) for the last eight years.  On May 29, 2023, Matkowski learned of "fires that were taking place" in an area known as the Old American Training Center from MTPD patrol officers.  He was familiar with the area and described it as "a vast tract of woods with pine trees."  Matkowski learned fire personnel had to extinguish "three separate fires" in that area.  He went to the area to view the "scene of the fire."

On May 31, Matkowski met with J.S. and his mother.  Matkowski interviewed J.S. in his mother's presence regarding the fires.  J.S. forwarded Matkowski a video recording J.S. had taken on May 29 at the scene of a fire,

2

which J.S. maintained showed J.M.H. involved in an arson. Matkowski authenticated the video recording he received, which was played in court, and the State moved it into evidence without objection.

On the video, the person filming is seen wearing purple Crocs and other individuals are filmed at the scene of a spreading fire in a wooded area. One individual in the video is seen from behind, throwing liquid from a gas can toward a grassy area with trees that was already on fire. That individual's stature and attire were discernible in the video. The State also introduced a screenshot picture of the individual with the gas can. The video had limited audio.

Matkowski maintained that J.S. came to the MTPD to give a statement because his mother required him to. He commented that J.S. appeared "very open and honest," "knew . . . he was going to be getting into trouble," and "[explained] everyone's involvement." Matkowski testified that J.S. "incriminat[ed] himself" and J.M.H. After the prosecutor asked Matkowski if he found J.S.'s testimony "trustworthy," defense counsel objected, and the question was withdrawn. Defense counsel thereafter asked Matkowski on cross-examination whether J.S. was viewed as "trustworthy," and Matkowski responded, "Yes." Defense counsel then asked questions highlighting that Matkowski had at times left the interview room and J.S. had indicated to his

3

mother outside of Matkowski's presence that he had become "good friends" with J.M.H. since "last week."

During cross-examination, Matkowski admitted the picture showed the "body type" and "hair" of the individual with the gas can, but it did not "100 percent" show that it was J.M.H. On redirect, Matkowski testified that J.S.'s video was corroborated because it depicted the area of one of the fires, J.S. owned purple Crocs similar to those viewed in the video, and J.S.'s voice was heard on the video.

J.S. testified he was fourteen years old and in middle school. He had known J.M.H. for two to three years and J.M.H. was "dating [his] cousin at the time" of the fire. J.S. confirmed he recorded the video and was wearing the purple Crocs. He identified the individual "in the video holding the gas can" at the fire as J.M.H.

On cross-examination, J.S. was asked if he told Matkowski he was "good friends" with J.M.H. and J.S explained "[he] never said that" but they "were chill." When asked if he lied, J.S. stated, "I did[ not]" and explained he did not remember Matkowski asking him if he and J.M.H. were "good friends."

J.M.H. testified he was not at the fire and had "no involvement at all." He explained there was "hate" between him and J.S. because he was dating J.S.'s

4

cousin. J.M.H. did not recall what he did on May 29, 2023. He further relayed he was "[n]ot close friends" with J.S.

After the testimony, the court issued an order accompanied by an oral decision. The court found J.M.H. purposefully started a fire in the forest of the Old American Training Center and adjudicated J.M.H. delinquent for conduct which if committed by an adult would constitute third-degree arson, N.J.S.A. 2C:17-1(b)(5). The court found the State proved each arson element beyond a reasonable doubt based on the credible evidence, including Matkowski and J.S.'s testimony. The court made specific credibility findings as to their individual demeanors while testifying. Regarding J.S.'s inconsistent statement regarding his friendship with J.M.H, the court found it was not material. It reasoned that "closeness . . . as it relates to young people, is something that . . . chang[es]." The court emphasized that it gave "a lot of consideration to" J.S.'s "statements on two separate occasions, first to law enforcement and then . . . in court, . . . that incriminated himself" and "identif[ied]" J.M.H. in the arson. Conversely, the court found J.M.H. lacked credibility, explaining he "was smiling throughout" and "divert[ed] his eyes . . . when answering the question about his presence at the scene."

5

Regarding Matkowski's testimony, the court determined the video he authenticated was highly relevant. The court noted that while the picture and video did not show the individual's face holding the gas can, "there [wa]s a distinctive hair that can be witnessed" in the picture. Additionally, the court found it relevant that J.S. wore purple Crocs and the "person filming the video was wearing purple Crocs." Based primarily on J.S.'s credible identification of J.M.H. as the individual at the fire and in the video holding the gas can, the court found the State had proven each element of third-degree arson under N.J.S.A. 2C:17-1(b)(5) beyond a reasonable doubt.

After the court's trial decision adjudicating J.M.H. delinquent, J.M.H. pled guilty to an amended charge of petty disorderly persons simple assault, N.J.S.A. 2C:12-1(a)(1), in an unrelated matter. J.M.H. admitted that on March 6, 2024, he sent text messages to another individual, agreeing to mutually "engage in a fight" and the altercation occurred. After finding J.M.H. provided a sufficient factual basis, the court adjudicated him delinquent of the petty disorderly persons offense of mutual fighting.

The court imposed on J.M.H. two years' probation with community service and other conditions on the arson adjudication. On the simple assault

adjudication, the court imposed a hybrid twelve-month probationary period to be served concurrently.

On appeal, J.M.H. raises the following point:

> J.M.H. WAS DEPRIVED OF A FAIR TRIAL BECAUSE THE DETECTIVE PROVIDED INADMISSABLE LAY OPINION ABOUT THE CREDIBILITY OF THE STATE'S KEY WITNESS.

II.

Our standard of review in juvenile delinquency bench trials "is narrow and is limited to evaluation of whether the trial [court's] findings are supported by substantial, credible evidence in the record as a whole." State in the Int. of J.P.F., 368 N.J. Super. 24, 31 (App. Div. 2004). We do not engage in an independent assessment of the evidence as if "[we] were the court of first instance." State v. Johnson, 42 N.J. 146, 161 (1964). "We must give deference to those findings of the trial [court] which are substantially influenced by his or her opportunity to hear and see the witnesses and have the 'feel' of the case, which we do not enjoy upon appellate review." State in the Int. of S.B., 333 N.J. Super. 236, 241 (App. Div. 2000). "The standard is whether there is sufficient credible evidence in the record to support the [court's] determination." State in the Int. of R.V., 280 N.J. Super. 118, 121 (App. Div. 1995). However,

7

we need not defer to the trial court's interpretation of the law.  State in the Int. of M.P., 476 N.J. Super. 242, 288 (App. Div. 2023).

Lay opinion testimony is permitted when it is "rationally based on the witness' perception" and "will assist in understanding the witness' testimony or determining a fact in issue."  N.J.R.E. 701.  However, lay opinion testimony "is not a vehicle for offering the view of the witness about a series of facts that the [court] can evaluate for itself or an opportunity to express a view on guilt or innocence."  State v. McLean, 205 N.J. 438, 462 (2011).  "[T]estimony in the form of an opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the [court] in performing its function."  Ibid.

In the context of police testimony, an officer may provide testimony about facts observed firsthand but may not "convey information about what the officer 'believed,' 'thought[,]' or 'suspected.'"  Id. at 460.  Our Supreme Court has held that it is improper for a police officer to give a lay opinion "bolstering" another witness's "credibility."  State v. Frisby, 174 N.J. 583, 592 (2002).  The Court in State v. R.K., 220 N.J. 444, 460 (2015), noted that as a general rule, "other witnesses are prohibited from giving their opinions about [another witness's] credibility."  Further, a police officer's testimony cannot imply that he or she

"possesses superior knowledge, outside the record, that incriminates the defendant." State v. Branch, 182 N.J. 338, 351 (2005).

Plain errors are those "clearly capable of producing an unjust result." R. 2:10-2. Demonstrating plain error "is a 'high bar,' . . . requiring reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alessi, 240 N.J. 501, 527 (2020) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 336 (1971)). "To determine whether an alleged error rises to the level of plain error, it 'must be evaluated "in light of the overall strength of the State's case."'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)). "The 'high standard' used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error.'" State v. Burnham, 474 N.J. Super. 226, 230 (App. Div. 2022) (quoting Santamaria, 236 N.J. at 404).

## III.

J.M.H. contends reversal and a remand of the court's adjudication is warranted because it impermissibly considered Matkowski's inadmissible lay

opinion testimony and its reliance on the testimony was clearly capable of producing an unjust result. J.M.H. also argues, "if reversal is ordered, [he] should be allowed to withdraw his subsequent guilty plea to [petty disorderly persons] simple assault" for fighting by mutual consent. After our review of the record and court's decision, we are convinced the adjudication is substantially supported by the evidence and any inadmissible testimony considered was harmless.

While we agree with J.M.H. that Matkowski's testimony regarding his belief that J.S. was "up front and honest [about] everything" was inadmissible lay opinion, the court's limited consideration of the improper testimony was not "clearly capable of producing an unjust result" nor did it deprive J.M.H. of a fair trial. R. 2:10-2. A review of the court's decision shows it heavily relied on the "credible identification in th[e] case by [J.S.] that th[e] person in the video was, in fact, [J.M.H.]." Notably, the court found J.S.'s in-court identification of J.M.H. and testimony that he participated in causing the fire was credible. The court specifically credited J.S.'s testimony because of his courtroom demeanor, including his "consistent tone and look[ing] at both counsel during their questioning." The court also reasoned that J.S. "made statements that incriminated himself in identifying [J.M.H.]." It further found relevant that J.S.

provided a video on which he identified himself and J.M.H. at the fire. Conversely, the court found J.M.H. was not credible in stating he was not at the fire. We conclude substantial credible evidence supports the court's adjudication of J.M.H. as delinquent for committing arson.

We also add that after defense counsel objected to the prosecutor's question to Matkowski about J.S.'s trustworthiness, the prosecutor withdrew the question. Then during cross-examination, defense counsel asked Matkowski about J.S.'s statements being trustworthy. Defense counsel highlighted J.S.'s conflicting statements regarding his friendship with J.M.H., seeking to discredit J.S. The court's observation that Matkowski assessed that J.S. was honest was shortly before it addressed that defense counsel successfully elicited on cross-examination that Matkowski admitted "he may have stepped out of the room" and J.S. provided a conflicting statement regarding the closeness of his friendship with J.M.H. Therefore, we are further convinced that under either harmless or plain error, Matkowski's inadmissible statements were not "clearly capable of producing an unjust result," warranting reversal of judgment. R. 2:10-2. The court's adjudication is supported by substantial credible evidence, and J.M.H. was not deprived of a fair trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

11

A-3456-23