# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3491-18T3

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

E.C.,

     Defendant-Respondent.

_____

Argued May 30, 2019 – Decided June 19, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 18-03-0633.

Michael A. Mink, Assistant Prosecutor, argued the cause for appellant (Mary Eva Colalillo, Camden County Prosecutor, attorney; Michael A. Mink, on the briefs).

Eric James Liszewski, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Eric James Liszewski, of counsel and on the briefs).

PER CURIUM

After defendant E.C.'s juvenile charges were involuntarily waived to the Law Division, Criminal Part, he was indicted for sexual crimes committed against his younger sisters, J.C. and S.C.: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3)(a) (count two); first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count three); second-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count four); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count five); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count six); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count seven); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count eight).[1] Although the State initially charged defendant with sexual crimes that began when defendant was eleven years-old, it agreed to amend the indictment to charge only those crimes that occurred after his fifteenth birthday.

The State moved to admit evidence that J.C. and S.C. were sexually assaulted before defendant's fifteenth birthday as either intrinsic or Rule 404(b)

---

[1] The juvenile court has exclusive jurisdiction over defendants under the age of eighteen, N.J.S.A. 2A:4A-24, but jurisdiction can be waived and the case sent to the Criminal Part for certain enumerated crimes – including sexual assault – when a defendant commits any such crimes between the ages of fifteen and eighteen, N.J.S.A. 2A:4A-26.1(c).

A-3491-18T3

evidence. N.J.R.E. 404(b). The State, by leave granted, appeals from the trial court's denial of its motion. Under the narrow parameters of the record before us, we affirm because the trial court did not abuse its discretion in denying the State's motion. State v. Gorthy, 226 N.J. 516, 539 (2016).

We are unpersuaded by the State's argument that our holding in State v. L.P., 338 N.J. Super. 227 (App. Div. 2001), countenances the admission of evidence of the prior assaults because the evidence in L.P. was admitted under a disused theory. There we decided that evidence of the defendant's sexual assaults of the victim prior to the dates charged in the indictment was admissible as atypical res gestae evidence, id. at 236, to explain to the jury the victim's inability to report continuing assaults because of helplessness engendered by her family's reaction to her first complaints: "the callous instruction 'to wear a pad,'" id. at 238-40. Here, the State argues that the prior acts evidence explains the entire history of defendant's treatment of the victims who "underwent years of grooming and sexual abuse."

Our Supreme Court, however, in State v. Rose, concluded the "continued use of the moniker of res gestae adds nothing more than an interpretative descriptor that risks clouding an evidence-rule analysis or, worse, avoiding its required rigor through invocation of a result-infused term." 206 N.J. 141, 175

(2011). The Court disapproved "the further use of res gestae to support evidential rulings," id. at 182, and, instead, directed trial courts to analyze the admissibility of uncharged bad act evidence: "The threshold determination under Rule 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under Rule 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly Rule 403." Id. at 179.

The trial court properly analyzed the evidence under those discrete lenses and determined the evidence of the prior acts – described by J.C. generally as "naked fondling" where defendant would put a belt around her legs and place his penis between her thighs, in her mouth or on her breasts "two or three times a week," until she was about eleven or twelve[2] – did not meet the admissibility criteria of either theory.[3]

---

[2] Defendant was born on March 26, 1990; J.C. on December 6, 1993; and S.C. on March 28, 1997. When J.C. was twelve, defendant was fifteen years old.

[3] S.C. could not give her exact age when defendant first sexually assaulted her, but said she was "probably . . . like, maybe nine or ten." Thus, the record is devoid of any prior acts that were perpetrated against S.C. prior to defendant's fifteenth birthday.

The trial court applied the "workable, narrow description of what makes uncharged acts intrinsic evidence of the charged crime," adopted from United States v. Green, 617 F.3d 233 (3d Cir. 2010):

> First, evidence is intrinsic if it "directly proves" the charged offense. This gives effect to Rule 404(b)'s applicability only to evidence of "other crimes, wrongs, or acts." If uncharged misconduct directly proves the charged offense, it is not evidence of some "other" crime. Second, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime."
>
> [Rose, 206 N.J. at 180 (quoting Green, 617 F.3d at 248-49).]

The trial court concluded that the prior acts did not directly prove the indicted crimes and were not performed contemporaneously with those crimes in order to facilitate them. The record fully supports that determination.

The indictment, amended as proposed,[4] avers defendant sexually assaulted J.C. by having her perform fellatio upon him between March 26, 2005 and December 5, 2006 when she was under the age of thirteen and by committing one act of vaginal-penile penetration on her between December 6, 2009 and

---

[4] We were not provided with an amended indictment that reflects charges only from defendant's fifteenth birthday.

A-3491-18T3

December 5, 2010. As to S.C., the indictment charges in separate counts that defendant committed an act of vaginal-penile penetration, had her perform fellatio upon him and committed sexual contact upon her between March 28, 2006 and March 27, 2009 when she was less than thirteen.[5] As confirmed during oral argument, the State's evidence of the dates on which the assaults occurred are not firmly established by the victims' recollection. The prior acts date back to December 2001 when J.C. recalled being assaulted when she was eight. Inasmuch as the State has not limited the evidence of prior acts it seeks to introduce, it is clear that some of the acts predate the indicted crimes by three to four years. As such, we agree the evidence was not admissible as intrinsic because the acts were not contemporaneous ones that facilitated the indicted crimes; nor do they directly prove those discrete crimes.

We also determine the State's reliance on State v. Santamaria, 236 N.J. 390 (2019), to support the admission of the prior acts as intrinsic evidence to be misplaced. The State argued to the trial court that, akin to the circumstances in Santamaria, its proffered evidence explained both the reason J.C. continued to subject herself to defendant's continued abuse over a long period and defendant's

---

[5] The indictment also charged defendant with three counts of endangering the welfare of S.C. for each of those sexual acts.

comfort level in demanding sex from his sister. In Santamaria, intimate photographic evidence sent to the defendant by the victim after her eighteenth birthday was admitted to show the admittedly consensual relationship between the victim and defendant began before she was eighteen, id. at 411, and was thus illegal. As the trial court here observed, that evidence was admitted to prove the timing of an admitted relationship. Admission of defendant's alleged prior acts, however, has a much greater propensity to show the existence of a denied relationship which at no point was legal. In short, the prior acts are not intrinsic evidence.

The trial court heeded the Rose Court's adoption of the Green instruction that if the evidence is not intrinsic, "all else must be analyzed under Rule 404(b)." Rose, 206 N.J. at 180 (quoting Green, 617 F.3d at 249). Rule 404(b) provides, in pertinent part:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

The State contends that the prior acts were relevant to motive, opportunity, intent, preparation, plan, knowledge, identification, or absence of mistake or

accident.[6]  The State makes no argument in its merits brief to support those contentions; as such we will not address them, Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 45 (App. Div. 2003) (holding that court will not consider an issue that is based on mere conclusory statements), except to recognize that none of those purposes for which the evidence can be admitted under Rule 404(b) is in dispute in this case.  Defendant denies committing the acts; he does not raise any of those factors in his defense and extrinsic evidence is not required for a jury to determine those issues which are clear from the manner in which the crimes were allegedly committed.  State v. Beckler, 366 N.J. Super. 16, 28 (App. Div. 2004).

The trial court also considered the State's other proposed purposes for the admission of the prior acts.  The State's principal argument, as set forth in its merits brief, is

> the victims allege that their parents learned of [defendant's abuse from the time he was eleven years-old] and failed to notify the authorities.  However, the abuses continued.  If these allegations cannot be presented to the jury, they would have only a limited understanding of why the [victims] failed to disclose

---

[6]  We note the trial court recognized the State's contention was that the evidence was relevant only to motive, intent, preparation, plan or absence of mistake. Although we do not normally consider arguments not made before the trial court, State v. Robinson, 200 N.J. 1, 20 (2009), we need not, in light of our holding, base preclusion on that ground.

the[] abuse to anyone else for many years. In addition, the [victims] felt coerced into performing sexual acts upon defendant at his request due to years of prior abuse going unpunished. To exclude this evidence would be to exclude extremely relevant evidence explaining why the victims acted the way they did.

In reviewing Cofield's[7] four prongs, the trial court afforded the second prong little weight, finding it had limited applicability. It cited to State v. Williams, 190 N.J. 114, 131 (2007), and confusingly said "the second prong of Cofield is only necessar[y] in similar situations," which is not the case here, but

---

[7] In State v. Cofield, the Court articulated a four-part test to determine if evidence of uncharged acts is admissible at trial:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [127 N.J. 328, 338 (1992) (quoting Abraham P. Ordover, Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b) And 609(a), 38 Emory L.J. 135, 160-61 (1989)).]

then concluded, "pursuant to Williams . . . the evidence in question is arguably similar in kind and similar in time." The court seemed to follow the same tack in holding – without conducting an evidentiary hearing – the State proved the third Cofield prong because, relying on the victims' statements, "it appears that the State would be able to make a showing by clear and convincing evidence, therefore giving the State the benefit of the doubt." It attributed moderate weight to that prong. While we do not sanction that analysis in determining if the State met Cofield's prongs – especially because the trial court found the victims' statements about the timing of their disclosures of abuse were "lacking somewhat in clarity" – this appeal does not involve a challenge to the trial court's findings that the State met its burden with regard to those Cofield factors. "[A]ppeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)).

We discern the trial court carefully assessed proofs relevant to the first and fourth prongs as they related to the State's argument that the evidence explained the reason for the victims' delay in reporting defendant's crimes. The court's careful review of both victims' statements, the only evidence proffered

by the State, "reveal[ed] that the vast majority of the alleged disclosures by the two victims occurred after the defendant turned" fifteen, including J.C.'s disclosure to her mother following the death of her father in 2011 and S.C's disclosure to her parents about seeing defendant engaged in a sex act with J.C. when S.C. was eight.

The trial court found that although the "date information" in the victims' statements was "not always clear," the "only clear indications of disclosures by either alleged victim before the defendant turned [fifteen] were first when J.C. was eight and the defendant about [thirteen when J.C. said] she told her parents about seeing the defendant and S.C. playing a game together naked.[8] The father later walked in on the defendant abusing J.C. The parents later yelled at the defendant." The other disclosure mentioned by the trial court that predated defendant's fifteenth birthday was not a disclosure by the victim. A former friend of defendant, Brian Carlton, disclosed to J.C. when she was ten or eleven that he was no longer friends with defendant, apologized, told J.C. to let him know if there was anything he could do and hugged her. Thus the record establishes only one clear disclosure prior to defendant's fifteenth birthday.

---

[8] A review of the transcript reveals J.C. said S.C. told their mother defendant and J.C. "were playing a game naked."

The trial court considered that if the disclosures before defendant's fifteenth birthday were excluded, the State still had "multiple disclosures by the . . . victims . . . to advance." The court added that the State's argument that the prior acts evidenced defendant's control over the victims was undercut by "substantially graphic detailed evidence of multiple sexual encounters with the two alleged victims" after defendant turned fifteen.

The trial court also concluded the evidence of prior acts had "limited probative value, especially in light of the other evidence the State possesses to seek to prove the alleged crimes and to show that the alleged victims disclosed the events to their parents and numerous others" to no avail. The court determined the prior act evidence constituted "piling on" and was "highly prejudicial" to the extent that it outweighed "the relatively meager probative value of the [prior bad acts] evidence." According "high weight" to factor four and "low weight" to the first prong, the court found the balance of all four factors militated against admission of the evidence.

We review evidentiary rulings for an abuse of discretion, State v. Kuropchak, 221 N.J. 368, 385 (2015), and reverse those rulings that "undermine confidence in the validity of the conviction or misapply the law . . . ." State v. Weaver, 219 N.J. 131, 149 (2014); State v. J.A.C., 210 N.J. 281, 295 (2012).

12

Simply stated, we do "not substitute [our] own judgment for that of the trial court, unless the trial court's ruling is so wide of the mark that a manifest denial of justice resulted." J.A.C., 210 N.J. at 295 (quoting State v. Brown, 170 N.J. 138, 147 (2001)). We discern no reason to countermand the trial court's ruling.

The court's findings are well supported. The State admitted to the trial court that there was "evidence of disclosures to numerous[] or several people" after defendant turned fifteen, including one disclosure to a friend that resulted in an investigation by the police and Division of Child Protection and Permanency personnel to whom J.C. – in the presence of her mother and defendant – denied any allegations. Those disclosures, like the one prior to defendant's fifteenth birthday, went unheeded and can be used to buttress the State's contention that the victims' late disclosure was based on their feeling of futility. Further, the court's assessment of the evidence relevant to the indicted crimes and that related to the prior acts is not wide of the mark. The prior act evidence, alleging acts against J.C. when she was as young as eight, is highly prejudicial. See State v. Willis, 225 N.J. 85, 102 (2016) (illustrating "the restraint that must be exercised in the admission of other-crime evidence in sexual assault cases"); see also State v. J.M., 225 N.J. 146, 161 (2016) (discussing the prejudicial effect of other-crimes sexual assault evidence on a

13 <span>A-3491-18T3</span>

jury). And, like the trial court, we fail to see high probative value of the prior act evidence. We are unconvinced the facilitation of the acts against J.C. prior to defendant's fifteenth birthday differed from the facilitation of the acts after that birthday so as to warrant their admission; again, all acts allegedly committed against S.C. occurred after defendant was fifteen. Further, we do not see the prior act evidence is relevant to grooming. According to the State's allegations, defendant did not groom his victims; he assaulted them.

Our decision addresses only the present status of the case. We leave to the sound gatekeeping discretion of the trial court the shifting evidential issues that may arise before and during trial, including changes occasioned by severance of charges against defendant's and the victims' mother for endangering the welfare of the children and hindering apprehension. Additionally, defendant may – through the introduction of evidence or examination of a witness – open the door to an issue, requiring the trial court to reevaluate a previous ruling or apply an evidential standard with fresh eyes. See State v. G.V., 162 N.J. 252, 264-65 (2000) (recognizing some prior crime evidence does not become admissible until the defendant puts the relevant purpose of that evidence in issue). We consider this caveat to be especially appropriate in light of the fact that the trial court did not hold an evidentiary

hearing and relied only on the victims' statements. The victims' actual testimony, including that related to the timing of events may impact on evidential issues; as may any questioning or argument by the defense about reasons for the victims' late complaints against defendant.

That possibility was touched upon in part by the parties in their supplemental briefs in which they addressed the scope of evidence relating to the reasons for late disclosure as impacted by the Supreme Court's limitation of child-abuse-accommodation-syndrome expert testimony in State v. J.L.G., 234 N.J. 265 (2018). We note that although J.L.G. was decided before the motion that is the subject of this appeal was argued, we do not see that the issue was raised before the trial court. We will not address it here. Robinson, 200 N.J. at 20.

Affirmed. We remand the case for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3491-18T3