**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2490-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

T.L.C.,[1]

      Defendant-Appellant.

_____

Submitted November 13, 2024 – Decided December 23, 2024

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-11-3520.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Samuel Carrigan, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials and pseudonyms to protect the privacy of the victim. See R. 1:38-3(c)(9).

After a jury trial, defendant T.L.C. appeals from twenty-six convictions for sexual offenses and endangering the welfare of a child. Defendant challenges the: prosecutor's summation; trial court's denial of various motions; jury instructions; and sentence imposed. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm in part, reverse in part, and remand.

I.

We discern the following facts from the record. On July 27, 2018, A.Y. visited her father at his residence. He observed that A.Y. did not want to return to her primary residence in Newark with her mother, R.L, sister, D.Y., and brother. After an argument with her father, A.Y. became distraught and revealed to him defendant wanted to have sex with her. At the time, A.Y. was fourteen years old, and D.Y. was seventeen years old. Defendant was forty-nine years old. Defendant had been dating R.L. and staying at her residence since 2015.

A.Y. played her father a phone recording of defendant asking her to have sex. She disclosed defendant had sex with her on July 10 and July 11. A.Y.'s father took her to the Irvington Police Department (IPD), where she provided a detailed statement. A.Y. relayed defendant had sexually assaulted her in a room he rented in Irvington. At trial, she testified that during the assaults, defendant

A-2490-22

touched her breasts, "licked her vagina," and penetrated her vaginally with his penis. She described defendant's room in Irvington as having "pink walls" and "a mirror."

On July 28, a Department of Child Protection and Permanency investigator informed R.L., while she was hospitalized suffering medical issues, of A.Y.'s sexual assault allegations against defendant. The same day, R.L. inquired of D.Y. whether defendant touched her. D.Y. began to cry and revealed defendant last sexually assaulted her two days earlier. D.Y. told her mother defendant began sexually assaulting her in 2015 when she was fourteen years old. At trial, D.Y. testified defendant first had sex with her in "February of 2015." She relayed defendant had "sucked [her] . . . breasts," licked her vagina, and had vaginal intercourse with her. Defendant sexually assaulted D.Y. for approximately three years, "more than twice a week," "in [her] mom's room," in her room, in "his car," at "his place in Irvington," at "his cousin's place in Paterson," and in "different motels." D.Y. described defendant's Irvington room as having "pink walls" and a "mirror on the ceiling."

D.Y. further testified defendant referred to himself as her "stepdad" and introduced her as his "stepdaughter." D.Y. believed defendant obtained the room

A-2490-22

in Irvington in 2018 when her older sister and her children moved into R.L.'s Newark residence.

On July 31, D.Y. gave a statement to an IPD detective. She later turned over underwear and a shirt retrieved from her hamper that she had worn contemporaneously with defendant's sexual encounters. An IPD officer delivered the clothing to the New Jersey State Police forensic laboratory (NJSP lab), serology unit, for forensic testing. After two of the underwear tested positive for sperm, the NJSP lab serology unit sent the samples to the DNA unit for further analysis, which revealed defendant's DNA was a source match for both. A NJSP forensic scientist testified defendant's DNA source match "was more rare tha[n] 1 in 7 trillion" and noted it "[wa]s that rare. So, that's why we[ we]re willing to say [he was the] source."

On August 23, an Essex County Prosecutor's Office detective conducted a recorded consensual intercept call between A.Y. and defendant. The detective had A.Y. text message defendant she was pregnant and needed to speak with him. During the recorded telephone conversation, defendant admitted to having sex with A.Y. twice and told her that "because the damage [wa]s already done," he wanted to have sex with A.Y. again "before [he] t[ook] [her] . . . to the chop shop" for an abortion.

A-2490-22

On August 24, IPD detectives arrested defendant at R.L.'s home. After receiving his Miranda warnings at the IPD, defendant waived his rights and provided a video-recorded statement. He denied D.Y.'s and A.Y.'s sexual assault allegations and stated the minors had never been in his Irvington one-bedroom residence.

On November 1, 2018, an Essex County grand jury indicted defendant on the following charges: five counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(c) (counts one, five, ten, nineteen, and twenty-two); seven counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (counts two, six, eleven, thirteen, eighteen, twenty, and twenty-three); five counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4) (counts three, seven, twelve, twenty-one, and twenty-four); four counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (counts four, eight, fifteen, and twenty-six); two counts of third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (counts nine and twenty-five); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3)(c) (counts fourteen and seventeen); and one count of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (count sixteen). The court dismissed count twenty-seven, second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3)(b), prior to defendant's trial.

5

On April 12, 2021, defendant filed a self-represented motion to dismiss the indictment that defense counsel thereafter supplemented. Defendant argued "the three-month interval from the grand jury orientation to the presentment unduly influence[d] the jurors." On January 24, 2022, the court denied the motions in an oral decision, finding the State "present[ed] exculpatory evidence." The court also found the grand jury orientation "was comprehensive and accurate."

Defendant retained new defense counsel and filed an additional motion to dismiss. Defendant also argued for a bill of particulars, seeking the exact offense dates, or more particular dates, and a recitation of how many sexual assault events D.Y. alleged for each charge. Specifically, defendant contended, "It [wa]s impossible to prepare an adequate defense to these charges without knowing the dates or approximate dates when each event [was] alleged to have happened and how many events must be defended." After hearing argument on August 30, the court issued an oral decision denying defendant's request for a bill of particulars. The court found "defendant [wa]s informed of the crimes charged against him to sufficiently . . . prepare a defense where, both, grand jury testimony and victim's statements have provided dates, locations, and times." In response to defendant's request for a proffer confirming the same grand jurors

6

sat for the "orientation" on the law and defendant's grand jury proceeding on October 29, 2018, the prosecutor represented it was the same grand jury panel throughout. The prosecutor specifically referenced the panel's designated number evidenced on the transcripts of the legal instructions and hearing.

During the twenty-two-day trial, A.Y., D.Y., and multiple other witnesses testified. During summation, defense counsel specifically focused on A.Y.'s and D.Y.'s credibility. Counsel highlighted A.Y.'s lack of emotion during cross-examination, in contrast to her direct examination testimony, where "she was crying, and all broken up, and sad." Defense counsel commented that A.Y. was "feisty" and "tough" on the stand, asserting "that whole crying thing was an act." After counsel referenced the girls' testimony and evidence, he stated to the jury, "I submit to you that perhaps some things happened. But you[ are] going to have to sift through all of the testimony and apply what you believe of that testimony." Defense counsel then remarked, "If you think I'm BSing you know, you know it . . . . If you think the witnesses on the witness stand are doing it, you know that . . . because there[ is] a difference in whether [the prosecutor] is asking her a question or I am." "Whether you find the witness testified with an attempt to deceive you, and I submit, again, that they[ are], particularly A[.Y.], . . . the demeanor . . . was clearly to do nothing else than deceive you."

7

The prosecutor thereafter stated during her summation:

> I want to talk a little bit about A[.Y.'s] testimony and credibility the defense is bringing up. I submit, just in general, ladies and gentlemen, that all of the witnesses were very credible. There was—there's absolutely nothing—no—what's the motive to deceive—

Defense counsel objected, but the court overruled the objection and stated to the jury that "[d]eterminations of credibility will be made by the jury. Please go forward." Thereafter, the prosecutor remarked:

> I submit, ladies and gentlemen, [A.Y.'s] demeanor, and everything about her, in terms of the factors, and the [j]udge is going to list off for you, about what you should consider, and credibility, is there. There is absolutely no reason for her to lie to you. There is absolutely no reason for [D.Y.] to lie to you.

Defense counsel again objected, which the court overruled.

After summations, the court charged the jury with the standard jury charge:

> As I instructed you when we started this case, you are the judges of the facts. And as judges of the facts, you are to determine the credibility of the various witnesses as well as the weight to be attached to their testimony. You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses, and the weight to be attached to the testimony of each witness.

A-2490-22

Regardless of what counsel said, or I may say, recalling the evidence in this case, it is your recollection of the evidence that should guide you as judges of the facts. Arguments, statements, remarks, openings, and summations of counsel are not evidence, and must not be treated as evidence.

[Model Jury Charges (Criminal), "Final Charge" (rev. Sept. 1, 2022).]

On October 31, 2022, the jury returned a guilty verdict on all counts.

The State timely moved for a discretionary extended term sentence based on defendant's status as a persistent offender under N.J.S.A. 2C:44-3(a). The court sentenced defendant on March 15, 2023. Defense counsel opposed an extended term, arguing "there is enough sentence range within what is prescribed by the legislature to sentence [defendant] to adequately punish him for what he's been convicted of" and advocated for a "sentence in the mid-range of the possible sentence ranges." The court found: defendant committed these crimes while he was in his forties; he was previously "convicted on at least two separate occasions for at least two crimes committed at different times"; and defendant's "last release from confinement was within ten years" of the date he committed the crimes against A.Y. and D.Y. Accordingly, it granted the State's request for an extended term on count nineteen.

A-2490-22

The court found the following aggravating factors: one, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense); three, N.J.S.A. 2C:44-1(a)(3) (risk of reoffending); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record and the seriousness of the offenses); nine, N.J.S.A. 2C:44-1(a)(9) (need for deterrence). The court found no mitigating factors.

After applying the factors established in State v. Yarbough, 100 N.J. 627, 644 (1985), the court ordered consecutive sentences for counts one, five, fourteen, and nineteen. The court found under the second and third Yarbough factors, concerning whether the crimes included separate acts of violence and whether the crimes were committed at different times, that there were multiple sexual assaults against the two victims that occurred "over an extended period of time." The court further noted the offenses "were not isolated," but rather "continuing." It again highlighted, under the fourth Yarbough factor, that there were two victims.

Regarding the overall fairness of defendant's sentence, the court noted defendant's relationship of trust with "the victims" and that he "acted as a stepfather to these two young victims." The court emphasized defendant exploited his position, engaging in criminalized behavior with one sister to then "graduate to the next." It also emphasized defendant's assaults resulted in A.Y.

A-2490-22

and D.Y.'s "continuing harm." Specifically, the court reasoned defendant's actions affected D.Y. and A.Y. as follows:

> [I]t's unalterable. It cannot be changed. It determines how they feel about themselves and about others for the rest of their lives. The difference between an isolated act, though an isolated act may be just as grave, is that it does not somehow establish, perhaps in the minds of a very young, vulnerable person, a sense of normalcy, where abuse then becomes the norm rather than the exception. The young victim's ability to even protest or to see it as something that they're not supposed to be exposed to is not only undermined but is eliminated.

After ordering the applicable mergers of counts, the court sentenced defendant to an aggregate 106-year prison term. The aggregate term consisted of: two consecutive eighteen-year terms on counts one and five subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; a ten-year term on count fourteen subject to NERA to run consecutively with counts one and five; a discretionary extended sixty-year term on count nineteen subject to NERA to run consecutively with counts one, five, and fourteen; two concurrent eighteen-year terms subject to NERA on counts ten and twenty-two; six concurrent ten-year terms subject to NERA on counts three, seven, twelve, seventeen, twenty-one, and twenty-four; two concurrent five-year terms on counts nine and twenty-five; and a concurrent eighteen-month term on count sixteen. The court also ordered defendant to

11

comply with all provisions of Megan's Law, N.J.S.A. 2C:7-2, and parole supervision for life, N.J.S.A. 2C:43-6.4, and imposed appropriate fines and penalties.

On appeal, defendant raises the following points[2]:

POINT I

THE COURT ERRED BY ALLOWING THE STATE TO OPINE ON WITNESS CREDIBILITY DURING SUMMATION WHEN [ELEVEN] OF [TWENTY-SIX] CONVICTIONS DEPENDED ON THAT TESTIMONY, INRODUCING UNFAIR PREJUDICE.

POINT II

THE 106-YEAR SENTENCE IS EXCESSIVE.

A. Under Torres,[3] Because A 106-Year Sentence Is Not Necessary To Further The Goals Of Deterrence Or Incapacitation, The Sentences Should Have Been Imposed Concurrently Rather Than Consecutively.

1. Extending Defendant's Long Sentence By Imposing Consecutive Terms Has No Added Deterrent Effect; The Sentencing Goal Of Deterrence Does Not Support Consecutive Sentencing.

---

[2] We make stylistic changes to the point headings for ease of reading. We also renumber defendant's additional arguments made in his self-represented brief for ease of reference.

[3] State v. Torres, 246 N.J. 246 (2021).

A-2490-22

2. Because The Age-Crime Curve Demonstrates That The Risk Of Recidivism Declines Dramatically As Age Increases And Is Exceptionally Low At The Age That Defendant Will Complete His Previously Imposed Sentence, The Goal Of Incapacitation Cannot Justify Imposi[n]g Lengthy Consecutive Sentences.

3. In The Absence Of Any Deterrent Or Incapacitative Reason To Run This Sentence Consecutively, Retribution Alone Cannot Justify A Sentence That Would Extend An Already Long Sentence And Ensure That Defendant Dies In Prison For Crimes That, While Very Serious, Did Not Result In Death.

B. Imposing A De Facto Life Sentence For Crimes Against Individuals That Do Not Involve Homicide Or Attempted Homicide Creates Undesirable Risks.

In a supplemental self-represented brief, defendant raises these additional arguments:

POINT III

[DEFENDANT] CHARGES THAT THE PROSECUTION COMMITTED MISCONDUCT WHEN IT FAILED TO CHARGE THE GRAND JURY IN A SINGLE PROCEEDING BUT IN A NINETY-DAY TIME SPAN WHICH VIOLATED [DEFENDANT'S] . . . STATE AND FEDERAL

13

CONSTITUTIONAL RIGHT TO A FAIR TRIAL [UNDER] <u>N.J. CONST.</u> ART. 1 PARA. 9 (1947).

POINT IV

THE TRIAL COURT ERRED WHEN IT DENIED [DEFENDANT'S] MOTION TO DISMISS THE INDICTMENT IN VIOLATION OF <u>N.J. CONST.</u> AMEND. ART. I, <u>U.S. CONST.</u> AMEND. V; <u>U.S. CONST.</u> AMEND. VI; AND <u>U.S. CONST.</u> AMEND. [sic].

POINT V

THE TRIAL JUDGE ERRED BY DENYING [DEFENDANT'S] MOTION FOR BILL OF PARTICULARS IN VIOLATION [OF] [DEFENDANT'S] V AMEND.; VI AMEND[.]; AND XIV AMEND. CONSTITUTIONAL RIGHTS.

POINT VI

THE TRIAL JUDGE ERRED WHEN IT GAVE THE JURY INSTRUCTIONS ON THE ENDANGERMENT OF THE WELFARE OF A CHILD.

POINT VII

THE CUMULATIVE EFFECT OF THE ERRORS COMMITTED DEPRIVED DEFENDANT OF A FAIR TRIAL (Not Raised Below).

## II.

Before we address each of defendant's contentions in turn, we acknowledge basic legal principles that govern this appeal. "We ordinarily will

14

not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). We, however, review a trial court's legal conclusions de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

Further, when a party objects to an alleged error, preserving an issue for appellate review, we examine if it was "'harmful error'—'whether in all the circumstances there [is] a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits.'" State v. G.E.P., 243 N.J. 362, 389 (2020) (alteration in original) (quoting State v. Mohammed, 226 N.J. 71, 86-87 (2016)). "Generally, failure to 'object or otherwise preserve an issue for appeal at the trial court level' limits appellate review to a plain error inquiry." Ibid. (quoting State v. Santamaria, 236 N.J. 390, 404 (2019)).

Plain errors are those "clearly capable of producing an unjust result." R. 2:10-2. Demonstrating plain error "is a 'high bar,' . . . requiring reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alessi, 240 N.J. 501, 527 (2020) (first quoting Santamaria, 236 N.J. at 404; and then quoting State v. Macon, 57 N.J. 325, 336 (1971)). "To

15

determine whether an alleged error rises to the level of plain error, it 'must be evaluated "in light of the overall strength of the State's case."'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)). "The 'high standard' used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error.'" State v. Burnham, 474 N.J. Super. 226, 230 (App. Div. 2022) (quoting Santamaria, 236 N.J. at 404).

A. Prosecutor's Summation Addressing the Witnesses' Credibility

Generally, "[p]rosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Williams, 471 N.J. Super. 34, 43 (App. Div. 2022) (quoting State v. Frost, 158 N.J. 76, 82 (1999)). To determine whether a prosecutor's improper comments in summation warrant reversal, we assess whether the impropriety was "so egregious that it deprived the defendant of a fair trial." Williams, 471 N.J. Super. at 45 (quoting State v. Smith, 167 N.J. 158, 181 (2001)).

A reviewing court must evaluate a prosecutor's challenged remarks in the context of the entire summation. State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008). "In deciding whether prosecutorial conduct deprived a

defendant of a fair trial, 'an appellate court must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" State v. Supreme Life, 473 N.J. Super. 165, 172 (App. Div. 2022) (quoting State v. Williams, 244 N.J. 592, 608 (2021)). "Thus, '[t]o justify reversal, the prosecutor's conduct must have been "clearly and unmistakably improper," and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense.'" State v. Wakefield, 190 N.J. 397, 438 (2007) (alteration in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)). "Every prosecutorial misstep [in summation] will not warrant a new trial." State v. Garcia, 245 N.J. 412, 436 (2021).

We begin by noting defense counsel correctly stated during summation, the court would instruct the jury regarding the "credibility of witnesses" and "that there are a lot of things that [a jury] can consider." Notably, defense counsel then focused significantly on A.Y's and D.Y.'s testimony and whether "the witness[es] testified with an attempt to deceive [the jury]." Indeed, the gravamen of the defense summation was that A.Y. and D.Y. were lying when they accused defendant of sexually assaulting them. Regarding A.Y.'s testimony, defense counsel stated, "[T]he demeanor between direct and cross-

17

examination was clearly to do nothing else than deceive you, make you feel sorry for her."  In further addressing their testimony, he suggested the jury should consider whether it was "an act" and inquired, "How did you like the appearance, the demeanor, of D.Y. and A.Y. on the witness stand?"

It is in this context that we review the prosecutor's summation.  "[W]e look, not to [the prosecutor's] isolated remarks, but to the summation as a whole." Atwater, 400 N.J. Super. at 335.  The prosecutor responded to defense counsel's summation, stating she was addressing "A[.Y.'s] testimony and [her] credibility the defense . . . br[ought] up."  The prosecutor continued, "I submit, . . . the witnesses were very credible" and posited for the jury's consideration, "[W]hat[] [was] the motive to deceive[?]"  She further addressed "[A.Y.'s] demeanor, and everything about her, in terms of the factors" that "the [j]udge [wa]s going to list" for consideration regarding credibility.  The prosecutor stated, "There is absolutely no reason for her to lie to you.  There is absolutely no reason for [D.Y.] to lie to you."

A review of the record yields the prosecutor's remarks directly responded to defense counsel's statements, which focused on attacking A.Y.'s and D.Y.'s credibility.  "A prosecutor may argue that a witness is credible, so long as the prosecutor does not personally vouch for the witness or refer to matters outside

the record as support for the witness's credibility." State v. Walden, 370 N.J. Super. 549, 560 (App. Div. 2004). The prosecutor made no personal statements vouching for A.Y.'s and D.Y.'s veracity. Therefore, we find no error in the prosecutor's remarks.

Notably, in its final charge to the jury, the court clearly explained that "[a]rguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence." Model Jury Charge (Criminal), "Final Charge" (rev. Sept. 1, 2022). We presume the jury followed the court's instructions. State v. Vega-Larregui, 246 N.J. 94, 126 (2021).

The prosecutor was entitled to respond to defense counsel's credibility arguments. See State v. Bradshaw, 392 N.J. Super. 425, 437 (App. Div. 2007). The prosecutor's comments were soundly based on the testimony presented and provided a permissible responsive argument concerning the witnesses' credibility. "[A] prosecutor is not forced to idly sit as a defense attorney attacks the credibility of the State's witnesses; a response is permitted." State v. Hawk, 327 N.J. Super. 276, 284 (App. Div. 2000); see also State v. Engel, 249 N.J. Super. 336, 379 (App. Div. 1991) (explaining a prosecutor may respond in summation to defense counsel's insinuation that the State's witnesses had lied and framed defendant). But even if we were to assume, for the sake of argument,

19

the prosecutor's comments on the credibility of State's witnesses exceeded the bounds of permissive summation comments, we are satisfied that under the harmless error standard, there was no "degree of possibility that [the error] led to an unjust result." State v. Cooper, 256 N.J. 593, 607 (2024) (quoting State v. Baum, 224 N.J. 147, 159 (2016)). Therefore, having reviewed the prosecutor's summation "within the context of the trial as a whole," State v. Feaster, 156 N.J. 1, 64 (1998), we reject defendant's argument that the prosecutor's remarks warrant reversal.

B. Motions to Dismiss the Indictment

We briefly address together defendant's self-represented contentions that reversal of his convictions is warranted because the court erred in denying his motions to dismiss the indictment. Defendant specifically argues dismissal of the indictment was required due to the: State's failure to present the offenses in a single grand jury proceeding; and the "extensive . . . delay in the indicting process," which was "ninety-day[s]" "from the [grand] jury's original orientation" to presentment. He also contends the court's denial of a bill of particulars was in error. Defendant avers his convictions are an "unjust result" because his indictment should have been dismissed. We are unpersuaded.

We review "[a] trial court's denial of a motion to dismiss an indictment . . . for abuse of discretion." State v. Tucker, 473 N.J. Super. 329, 341 (App. Div. 2022) (quoting State v. Twiggs, 233 N.J. 513, 544 (2018)). "'[B]ecause grand jury proceedings are entitled to a presumption of validity,' defendant bears the burden of demonstrating the prosecutor's conduct requires dismissal of the indictment." State v. Majewski, 450 N.J. Super. 353, 365 (App. Div. 2017) (alteration in original) (quoting State v. Francis, 191 N.J. 571, 587 (2007)).

A "guilty verdict is universally considered to render error in the grand jury process harmless." State v. Simon, 421 N.J. Super. 547, 551 (App. Div. 2011). Even assuming there were errors in the grand jury proceedings, the errors are typically cured by a petit jury's guilty verdict. State v. Cook, 330 N.J. Super. 395, 411 (App. Div. 2000) (finding a guilty verdict renders harmless any failure to present exculpatory evidence to the grand jury); State v. Laws, 262 N.J. Super. 551, 563 (App. Div. 2000) (finding the slight chance that the grand jury was uninformed as to the law "was rendered moot by defendant's subsequent trial and convictions"); State v. Ball, 268 N.J. Super. 72, 120 (App. Div. 1993) (finding that even if grand jury instructions were erroneous, the error was rendered moot by a later conviction at trial), aff'd, 141 N.J. 142 (1995), certif. denied sub nom., Mocco v. New Jersey, 516 U.S. 1075 (1996).

We discern no abuse of discretion by the court's denial of defendant's motions after finding no error in the grand jury proceeding. We note the prosecutor established the same grand jury panel that sat for the legal orientation also indicted defendant, as identified by the same grand jury panel number. Further, if there was an error in the "span of time" between the prosecutor's presentation of the applicable law and the grand jury's indictment, the petit jury's guilty verdict cured it.

We also reject defendant's arguments that his motions to dismiss the indictment and for a bill of particulars were incorrectly denied because he was foreclosed from preparing a proper defense without D.Y.'s alleged sexual assault "dates or approximate dates." Our Supreme Court has established that an indictment must inform a "defendant of the offense charged against him, so that he may adequately prepare his defense." State v. Dorn, 233 N.J. 81, 93 (2018) (quoting State v. LeFurge, 101 N.J. 404, 415 (1986)). The indictment must provide sufficient information specific to the offense. Ibid. Nonetheless, "when the indictment charges a sexual offense against a minor, the specificity of dates need not be 'exacting.'" State v. S.J.C., 471 N.J. Super. 608, 628 (App. Div. 2022) (quoting State v. C.H., 264 N.J. Super. 112, 125, 624 (App. Div. 1993)). Our Supreme Court has recognized that "there is consistent and long-standing support

in the scientific literature that most child victims of sexual abuse delay disclosure." G.E.P., 243 N.J. at 384 (quoting State v. J.L.G., 234 N.J. 265, 294 (2018)). Sexually abused minors' delayed reporting consequentially affects their recollection of precise assault dates. Here, the indictment sufficiently specified defendant assaulted D.Y. between February 2015 and July 2018. In a situation where a child is sexually assaulted on numerous occasions over a protracted period, it is unrealistic to expect the victim to recall specifically each date on which they were sexually abused. Our law requires no such specificity. Here, defendant's due process right to notice was satisfied by the range of dates set forth in the indictment. Thus, we discern no abuse of discretion in the court's denial of defendant's motions.

### C. Endangering the Welfare of a Child

We begin by recognizing that "[t]he proper standards of review of jury instructions are well-settled: if the party contesting the instruction fails to object to it at trial, the standard on appeal is one of plain error; if the party objects, the review is for harmless error." Cooper, 256 N.J. at 607 (quoting Willner v. Vertical Reality, Inc., 235 N.J. 65, 80 (2018)). We note defendant did not object to the court's jury charge on endangering the welfare of a child.

23                                                                A-2490-22

We are unpersuaded by defendant's contention that the "judge did not give the entire jury instruction" on endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). Defendant specifically argues endangering the welfare of a child has four elements, and the court "left out one of the elements." Defendant's argument lacks merit, as he simply separates the second jury charge element—"[t]hat defendant knowingly engaged in sexual conduct, which would impair or debauch the morals of a child"—into two parts. The record demonstrated the court read the model jury charge in its entirety, which includes the statutory offense of endangering the welfare of a child in pertinent part and instructed the jury of the required three elements necessary, beyond a reasonable doubt, to find defendant guilty. See Model Jury Charges (Criminal), "Endangering The Welfare of a Child, Sexual Conduct (N.J.S.A. 2C:24-4(a)(1))" (rev. Apr. 7, 2014). Thus, defendant's challenge to the jury instructions is without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

D. Cumulative Error

Further, we reject defendant's contention that the cumulative effect of the errors committed warrants reversal. Defendant has failed to demonstrate a single error, much less a cumulative pattern of errors that denied him a fair trial.

"A defendant is entitled to a fair trial but not a perfect one." State v. Allen, 354 N.J. 530, 550 (2023) (quoting State v. R.B., 183 N.J. 308, 334 (2005)).

E. Sentence

Finally, we address defendant's contention that his sentence should be vacated and remanded for resentencing. Defendant was sentenced to an aggregate 106-year term of imprisonment. At sentencing, the court found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense); three, N.J.S.A. 2C:44-1(a)(3) (risk of reoffending); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record and the seriousness of the offenses); and nine, N.J.S.A. 2C:44-1(a)(9) (need for deterrence). The court ordered consecutive sentences for counts one, five, fourteen, and nineteen.

When sentencing a defendant for multiple offenses, "such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a). Sentencing determinations are reviewed on appeal with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the

sentence clearly unreasonable so as to shock the judicial conscience."

[Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Once a sentencing court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b), it "may impose a term within the permissible range for the offense." State v. Morente-Dubon, 474 N.J. Super. 197, 208 (App. Div. 2022) (quoting State v. Bieniek, 200 N.J. 601, 608 (2010)); see also State v. Case, 220 N.J. 49, 65 (2014) (instructing that appellate courts may not substitute their judgment for that of the sentencing court, provided that the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record").

In Yarbough, 100 N.J. at 642-44, our Supreme Court established criteria that a sentencing court must consider when deciding whether to impose consecutive sentences. "The Yarbough factors are qualitative, not quantitative; applying them involves more than merely counting the factors favoring each alternative outcome." State v. Cuff, 239 N.J. 321, 348 (2019). A "sentencing court must explain its decision to impose concurrent or consecutive sentences in a given case." Ibid. "When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed

on appeal." State v. Miller, 205 N.J. 109, 129 (2011). An explanation of the "overall fairness" is necessary "to 'foster[] consistency in . . . sentencing in that arbitrary or irrational sentencing can be curtailed and, if necessary, corrected through appellate review.'" Torres, 246 N.J. at 272 (alteration in original) (quoting State v. Pierce, 188 N.J. 155, 166–67 (2006)).

The court provided sufficient findings on the aggravating factors. The court found aggravating factors one, three, six, and nine. It specifically found, under aggravating factor one, that the "totality of the harm to the victims [wa]s aggravated by the vulnerability of the victims." Under aggravating factor three, the court noted "defendant ha[d] been involved in the criminal justice system since the age of [thirteen]." The court highlighted, under aggravating factor six, the length of defendant's criminal history and his conviction for aggravated manslaughter. Regarding factor nine, the court noted defendant had not been deterred from committing offenses. We discern no error in the court's aggravating factor findings.

Defendant asserts the sentencing court failed to properly apply the Yarbough factors and explicitly assess the overall fairness of the four consecutive sentences imposed, in contravention of the Court's holding in Torres. In accessing the Yarbough factors, the court found it relevant that

defendant perpetrated separate acts of sexual assault against D.Y. and A.Y. and that each victim would continue to suffer permanent and lasting emotional repercussions. The court specifically noted defendant committed multiple violent sexual assaults against D.Y. and A.Y. and that he was like a "stepfather to these two young victims." We discern no abuse of discretion by the court in ordering consecutive sentences under Yarbough.

Defendant was also sentenced to a discretionary extended term of imprisonment on count nineteen as a persistent offender. N.J.S.A. 2C:44-3(a). Recently, the United States Supreme Court in Erlinger v. United States held "the Fifth and Sixth Amendments generally guarantee a defendant the right to have a unanimous jury find beyond a reasonable doubt any fact that increases his exposure to punishment." 602 U.S. 821, 828 (2024). The Supreme Court further stated, "Virtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." Id. at 834 (alteration in original) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

Our court recently concluded in State v. Carlton that pursuant to Erlinger, "a unanimous jury must find beyond a reasonable doubt that all . . . of the

[N.J.S.A. 2C:44-3(a)] factual predicates are present, or the defendant must admit these predicates as part of a knowing and voluntary waiver of the right to a jury trial with respect to extended-term eligibility." ___ N.J. Super. ___, ___ (App. Div. 2024) (slip op. at 22-23). We further concluded in Carlton that the application of Erlinger's holding to the persistent offender statute, N.J.S.A. 2C:44-3, applies retroactively to pipeline cases. Id. at ___ (slip op. at 20); see also Griffith v. Kentucky, 479 U.S. 314, 328 (1987) (holding "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past").

We therefore afford Erlinger's holding pipeline retroactivity to defendant's direct appeal of his sentence. We reverse defendant's extended term sentence imposed on count nineteen and remand for resentencing consistent with Erlinger and Carlton. If the State seeks to impose an extended term sentence on remand, the court shall hold a jury trial limited to the question of whether defendant is a persistent offender. See N.J.S.A. 2C:44-3(a). The State shall have the burden of proving, beyond a reasonable doubt, the required persistent offender elements. A jury shall determine whether defendant: was twenty-one years of age or older at the time of committing the crime; "has been previously convicted

29

on at least two separate occasions of two crimes"; committed the earlier crimes "at different times"; was "at least [eighteen] years of age" when he committed the prior crimes; and that the latest of the prior convictions, or the last release from confinement, whichever is later, was "within [ten] years of the date of the crime for which defendant is being sentenced." N.J.S.A. 2C:44-3(a).

At resentencing, consistent with Torres, the court shall provide "[a]n explicit statement, explaining the overall fairness" of defendant's aggregate sentence. 246 N.J. at 268. As our Supreme Court has stated, "the overall fairness of a sentence to be imposed serves to validate a court's decision by contextualizing the individual sentences' length, deterrent value, and incapacitation purpose." Id. at 271.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed in part, and remanded for further proceeding consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2490-22